**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEAN M. BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-1677 NAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The following opinion is intended to be the opinion of the Court judicially reviewing the denial of Jean Bradley's application for a period of disability and disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 10.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. The Court heard oral argument in this matter on December 8, 2015. Based on the following, the Court will affirm the Commissioner's decision.

## I. Background

On September 3, 2010, Bradley applied for a period of disability and disability insurance benefits. (Tr. 239-48.) The Social Security Administration ("SSA") denied Bradley's claim and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 142-48.) The SSA granted Bradley' request for review. (Tr. 149-50.) Administrative hearings were held on March 13, 2012 and December 11, 2012. (Tr. 34-133.) Bradley, who was represented

by counsel, testified at the hearing. On April 12, 2013, the ALJ issued a written opinion and found that Bradley was disabled under the Social Security Act from June 18, 2009 through September 30, 2010. (Tr. 12-27.) The ALJ also found that Bradley's disability ended on October 1, 2010; therefore she was not entitled to benefits after that date. (Tr. 13.) Bradley requested review of the ALJ's decision from the Appeals Council. (Tr. 7.) On July 24, 2014, the Appeals Council denied Bradley's request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Bradley filed this appeal on September 29, 2014. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on December 1, 2014. [Docs. 12, 13.] Bradley filed a Brief in Support of Complaint on March 3, 2015. [Doc. 20.] The Commissioner filed a Brief in Support of the Answer on June 1, 2015. [Doc. 25.] Bradley filed a Reply Brief on June 15, 2015. [Doc. 26.]

## II. Issues for Review

Bradley presents three issues for review. First, Bradley contends that the ALJ erred in failing to find that she had a severe mental impairment before or after October 1, 2010. Second, Bradley asserts that the ALJ erred in failing to give significant weight to the opinions of two treating psychiatrists and two therapists. Finally, Bradley contends that the ALJ erred in failing to include any mental limitations in Plaintiff's RFC for the period beginning October 1, 2010.

## III. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's

decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. Discussion

In her opinion, the ALJ found that from June 18, 2009 through September 30, 2010, Bradley had the severe impairments of umbilical hernia, hyperlipidemia, breast cancer, and obesity. (Tr. 16.) The ALJ determined that the severity of Bradley's breast cancer during the

aforementioned time period, medically equaled Listing 13.10(A)[1]. (Tr. 18.) The ALJ also determined that as of October 1, 2010, Bradley had not developed any new impairments and medical improvement occurred on that date. (Tr. 19.) Therefore, after October 1, 2010, Bradley no longer had an impairment or combination of impairments that met or equaled a listing after that date. (Tr. 19.) Further, the ALJ found that after October 1, 2010, Bradley had the RFC to perform light work, except she could frequently balance, crouch, crawl, and reach overhead with the right upper extremity and she must avoid any exposure to unprotected heights. (Tr. 19.) The ALJ concluded that Bradley could perform her past relevant work as an accounting clerk, office clerk, and billing clerk, because it did not require the performance of work-related activities precluded by the claimant's RFC. (Tr. 24.)

After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. § 404.1508. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 404.1520(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not 'severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); 20 C.F.R. § 416.920(a)(4)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the

[1] The listing of impairments in Appendix 1 describes for each of the major body systems impairments considered to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a).

impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d at 1043). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Id.* (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708.

The ALJ found that the record did not support any significant functional limitations due to mental impairments and found that Bradley's mental impairments were non-severe. (Tr. 16.) The Court notes the following evidence regarding Bradley's mental health treatment.

Bradley's treating psychiatrist, Dr. Fred G. Hicks, diagnosed her with bipolar disorder, mixed and possible attention deficit hyperactivity disorder (ADHD). (Tr. 452-457, 699-704, 1362-1373.) Dr. Hicks consistently performed mental status examinations and assessed Bradley with a global assessment functioning score[2] (GAF) between 55 and 65. (Tr. 324.) A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR at 34. A GAF score between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. DSM-IV-TR at 34. In a Medical Source Statement dated January 13, 2012, however, Dr. Hicks found that Bradley had marked limitations[3] in the ability to maintain reliability and respond to changes in a work setting. (Tr. 708-709.) He also found that she had moderate limitations[4] in the ability to

---

[2] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) (DSM-IV-TR).

[3] A marked limitation, as defined on the medical source statement, is a "limitation that seriously interferes with the ability to function independently, appropriately, and effectively. This level of limitation is incompatible with the ability to perform the function 8 hours a day, 5 days a week, or on an equivalent work schedule." (Tr. 707, 1396.)

[4] A moderate limitation, as defined on the medical source statement is a "significant functional limitation that is more than minimal." (Tr. 707, 1393.)

cope with stress, function independently, maintain personal appearance, relate in social situations, accept instructions and respond to criticism, understand and remember simple instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with others, make simple work-related decisions, and perform at a consistent pace. (Tr. 708-709.) Dr. Hicks opined that her medical impairments would cause unpredictable interruptions in her work day twice a day, late arrival at work, and absences from work 5 days per month. (Tr. 709.) Dr. Hicks also opined that her current GAF score was 60. The Court agrees with the ALJ that the substantial restrictions contained in the medical source statement are inconsistent with Dr. Hicks' treatment notes and other mental health treatment notes in the record.

Brandy Cruesoe, a licensed clinical social worker, provided mental health treatment to Bradley for approximately a year and a half on a near weekly basis. (Tr. 720-51, , 765-68, 1347-61, 1374-1427.) Ms. Cruesoe diagnosed Bradley with PTSD, bipolar disorder, mixed and possible ADHD. Ms. Cruesoe's treatment notes indicated that Bradley was making moderate progress and Cruesoe assessed Bradley with GAF scores that increased from a low of 25 in September 2011 to consistent GAF scores of 70 in January 2012. Ms. Cruesoe also completed a Medical Source statement in January 2012. (Tr. 1393-96.) Ms. Cruesoe opined that Bradley had marked limitations in the ability to maintain attention and concentration for extended periods, moderate limitations in the ability to understand and remember simple instructions, and mild limitations in the ability to cope with stress, behave in an emotionally stable manner, and maintain socially acceptable behavior. (Tr. 1394-95.) Ms. Cruesoe also opined that Bradley's work would be unpredictably interrupted during a normal work day. Ms. Cruesoe estimated that Bradley would arrive late to work 1 to 5 times per month and be absent 1 to 2 days per month

due to her medically determinable impairments. (Tr. 1395-96.) Ms. Cruesoe also assessed Bradley with a GAF of 70. (Tr. 1396.) Ms. Cruesoe's findings in the Medical Source Statement regarding Bradley's functional limitations adhere to her treatment, notes except where she indicates Bradley would have problems with timeliness, absences, ability to concentrate, and ability to understand simple instructions. At the time of Ms. Cruesoe's opinion, Bradley was teaching at a community college and had been doing so on a consistent basis.

In September 2011, Bradley attempted suicide by overdosing on Warfarin. (Tr. 808-1018, 1228-30, 1343-45.) Bradley was hospitalized for three days after the overdose. (Tr. 808-1018, 1228-30, 1343-45.)

In November 2012, Bradley attempted to establish care at BJC Behavioral Health Community Mental Health Center. At her initial visit, Bradley met with Dr. Rachel Morel. (Tr. 1506-1508.) Dr. Morel diagnosed Bradley with bipolar affective disorder and PTSD. (Tr. 1508.) She assessed Bradley's GAF as 45, which indicates serious symptoms or serious impairment with social occupational or school functioning. (Tr. 1508.) After her admission to the outpatient program, she was evaluated by an licensed clinical social worker, Gloria Jourdan, who also assessed Bradley with a GAF of 45. (Tr. 1509-15.) Bradley was accepted into the program and there are no additional mental health treatment records after that date.

A review of the entire record demonstrates that the ALJ's decision was supported by substantial evidence. Bradley's treatment providers indicated some substantial functional limitations in their medical source statements, but their treatment notes (including GAF scores) and Bradley's activities of daily living contradict the limitations suggested in their opinions. Although the Social Security Administration declines "to endorse the GAF scale for use in the Social Security and SSI disability programs, GAF scores may still be used to assist the ALJ in

assessing the level of a claimant's functioning." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). None of Bradley's treatment providers restricted her from working due to her mental impairments.[5] *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (lack of restrictions by treating physician supports ALJ determination that plaintiff was not disabled). In fact, Bradley worked as a community college instructor during the alleged period of disability.

Bradley has not met her burden to show that her mental impairments were severe. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Therefore, the Commissioner's decision will be affirmed. Because the Court finds that substantial evidence supports the ALJ's determination that Bradley's mental impairments were not severe, the Court will not address the other issues presented in Bradley's brief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 20.]

---

[5] The Court is aware that the ALJ erred when stating that Dr. Anne Winkler, the medical expert, noted no work related functional limitations due to Bradley's ongoing psychiatric problems. (Tr. 16.) Dr. Winkler actually stated that she would "defer to mental health" regarding that." Tr. 41.

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 8th day of December, 2015.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE